[No. 2364.    July 1, 1920.    Rehearing Denied Oct. 5, 1920.]

## TEXAS BANK & TRUST CO., OF EL PASO, TEX., v. CAVIN et al.

### SYLLABUS BY THE COURT.

1. The payee and holder of a joint and several note signed by C. and A., with knowledge that A. signed said note to secure or as collateral for another note signed by C., can only recover from A. the amount remaining due on the note of C. for which the joint note was collateral.    P. 333

2. The payee and holder of a collateral note, with knowledge that it has been diverted from the purpose for which it was given, cannot hold the accommodation maker on such collateral note liable for any other propose, or to any greater extent than that for which the accommodation note was given.    P. 333

3. The joint and several maker of a prommissory note, who pledges it as security for another note signed by him, and for "any and all other indebtedness due by him," is liable for the note, although the liability of his joint maker is limited to the amount due on the note for which the joint and several note was given as security.    P. 334

4. In a suit on a promissory note, where the defendant pleads payment and a counterclaim arising out of other notes given to the plaintiff, and the plaintiff then submits an itemized statement, and on trial both parties request that the case be referred and an accounting made, the court should order an accounting to ascertain the state of accounts between the parties.    P. 334

5. The practice of interrogating the court under the guise of requested findings is condemned. Counsel should submit to the trial court such ultimate findings of fact and conclu-

sions of law as in his opinion the case justifies, and request that the court either find, or refuse to find, such conclusions.
P. 336

Appeal from District Court, Chaves County; Richardson, Judge.

Action by the Texas Bank & Trust Company of El Paso, Tex., against G. E. Cavin and another. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

REID, HERVEY & IDEN, of Roswell, for appellants.

Court should have rendered judgment in account, case being tried on theory of account.

Judgment could. be rendered against Amis only for amount remaining due on note. 8 C. J. 265.

Payee cannot be holder in due course.

8 C. J. 469; Van Ploeg v. Van Zunk, 13 L. R. A. (N. S.) 490; Builders' Lime Co. v. Weimer, (Iowa) 151, N. W. 100; St. Charles Savings Bank v. Edwards, 243 Mo. 553; Long v. Schaffer, 185 Mo. A., 641; Gresham Bank v. Walsh, 76 Or. 272, 147 P. 534; Bradshaw v. Miner's Bank, 81 Fed. 902, 26 C. C. A. 673; Jones v. Citizens' State Bank, 39 Okl. 393, 135 P. 373.

Bank is not holder in due course as to preexisting debt. 8 C. J. 267; Sutherland v. Mede, 80 N. Y. S. 504; Harris v. Fowler, 110 N. Y. S. 987.

Bank was chargeable with notice that accommodation maker will be liable for period longer than face of note. 8 C. J. 264; Altoona Second National Bank v. Dunn, (Pa.) 31 A. S. R. 742; Chester v. Dorr, 41 N. Y. 279; Continental National Bank of New York v. Bell, (N. Y.) 25 N. E. 1070; Vol. I, Daniel on Negotiable Instruments, Sec. 726, Note 22; 3 R. C. L. Sec. 251.

"Assuming that there was no wrongful diversion of the note by Crosby, nevertheless the bank cannot enforce it against the accommodation maker for any amount beyond that for which it was pledged, nor for a debt for which it was not pledged. In respect of any excess, it stands in the situation of Crosby, who clearly could not enforce payment."

Cominsky v. Coleman, 114 N. Y. S. 875; Battle v. Weems, 44 Ala. 105; Carrol v. Peters, 1 McGloin 88; Hoffman v. Foster, 43 Pa. St. 137; Bowery v. Hastings, 12 Casey, 285; Bacon v. Harris, 10 Atl. 649; Sears v. Moore, 171 Mass. 514, 50 N. E. 1027.

H. C. MAYNARD, of Roswell, for appellee.

"Where a contract of partnership related back and covered a prior enterprise of one of the partners for which goods were furnished to him by a third person, the partner was liable." Levenworth v. Brandon, 136 Pac. 375, Decennial Digest, Partnership, 239.

If the court will read the letter, Exhibit H., and the bill of sale attached to the deposition, it can come to no other conclusion than that Cavin assumed the indebtedness. The law is clear. The contract in the note is clear as to what was intended by Cavin.

"A pre-existing debt is sufficient consideration to support a pledge of goods in the hands of the pledgee as against the seller although the latter would have the right to rescind the sale and recover the goods from the purchaser, had the same remained in his possession." Haraszthy v. Shandel, 27 Pac. 876 (Colo.)

"Assignment of property to secure loans made and to be made, valid as to all loans and advances made before third parties and have acquired liens." United States v. Lennox, Federal case No. 155592.

"A pledge as well as a mortgage may be made to secure an obligation not yet arisen into existence." In re Wolf, 12th La. Ann. 525.

"Where the terms of a note provide that the collateral securities deposited therewith, are to secure the payment of the note, and also for any other liabilities then due, or which might afterwards be contracted by the maker, such agreement is valid as to the two notes, which the holder had previously rediscounted for the maker." Hanover National Bank v. Brown, 535 S. W. 206.

The note sued upon was delivered to the appellee at its place of business in the city of El Paso, Texas, and there is no conflict of evidence of that point. It is therefore a Texas contract, and is governed by the laws of the State of Texas.

"Where a note is executed by two persons whereby they

jointly and severally promise to pay sum specified, and one signs it as an accommodation to the other, he is liable as a maker and not a surety, so far as the payee of the note is concerned." Traube v. Cook 124 S. W. 455.

"If the makers of a note agree when the loan is made that all are primarily liable, the payee may hold all parties as principals though some of them wee accommodation signers." First National Bank v. Rusk Pure Ice Co., 136 S. W. 89 (Texas).

"A person signing a note on its face as an accommodation maker is primarily liable to the payee as a joint maker though the payee knew of the accommodation nature of the transaction." First National Bank v. Meyers, 152 N. W,. 657 (North Dakota).

"The maker of a note signing with the consideration to lend his name to another makes him, under the Negotiable Instruments Act, an "accommodation maker," liable to the holder for value though when taking it, knowing him to be such," Metzger vs. Sigall, 145 Pas. 72 (Washington).

The rule is well established that one who has received accommodation paper after it has been diverted from its contemplated purpose, without notice of the diversion, in good faith and for value, is entitled to recover thereon. 1 Am. & Eng. Enc. Law, 2d Ed. p. 384 and cases cited.

The law in this state and in most other jurisdictions is that the transferee of accommodation paper, even after maturity and with notice that it is accommodation paper, takes it discharged of all defenses that might have existed against the accommodated party. The case of Miller v. Larned, 103 IIII. 562, is a conclusive authority against appellants' contention on this point.

No one can ever have a legal right to require another to execute accommodation paper in his favor. In order to give it the character of accommodation paper, it must be made without legal consideration and be delivered purely for the accommodation of the accommodated party. The law recognizes the right of the accommodation party to impose any restrictions, conditions, or limitations upon the paper that he sees proper. I Am. & Eng. Enc. Law, 2d Ed., p. 383; Benjamin v. Rogers, 126 N. Y. 60, 26 N. E. 970. Unless such restrictions are writ-

ten into the note or otherwise brought to the knowledge of the transferee at the time or before the paper is passed to him, such restrictions, limitations, or conditions will be no defense, and the fact that the paper may be past due at the time will not charge the transferee with notice of mere parol restrictions. Naef v. Potter, 80 N. E. 1084.

The weight of authority upholds the view that the transferee of accommodation paper after due may enforce the same against the accommodation maker.

Joyce on Defenses to Commercial Paper, pp. 282 (A. D. 1907); 1 Dan. Neg. Instruments (5th Ed.) p. 726 (A. D. 1903); 2 Randolph Comm. Paper (2d Ed.) p 677 (1899); Story Prom. Note (7th Ed.) p. 194 (A. D. 1878); 2 Parsons Notes and Bills, p. 29 (A. D. 1865); Mersick v. Alderman, 77 Conn. 634, 60 Atl. 109; Black v. Tarbell, 89 Wis. 390, 61 N. W. 1106; 1 Am. and Eng. Ency. Law, 364; Marling v. Jones 119, N. W. 931.

### OPINION OF THE COURT.

RAYNOLDS, J. This was an action instituted by the plaintiff bank against defendants upon their joint and several promissory note for $3,000, dated December 22, 1915, payable on or before 60 days to the said bank, and praying judgment for the amount of principal and interest of said note and 10 per cent. of said amount as attorney's fees.

The answer admits the making of the note, but denies any indebtedness. By way of new matter it is pleaded that the note in question was placed with the plaintiff bank as collateral security to another note dated January 3, 1916, for $6,568.19, signed by Cavin, and that the defendant Amis, one of the makers of the said note of December 22, 1915, was an accommodation maker, and signed and delivered said note to the defendant Cavin with the express understanding that it would be used as collateral security to the above-mentioned note and for no other purpose; that said note of January 3, 1916,

was executed by Cavin to the plaintiff bank in pursuance of a prior agreement made about December 20th, for the purpose of obtaining money to pay a draft of the Saxon Automobile Company and to enable the defendant Cavin to obtain two carloads of Saxon automobiles at El Paso, Tex., and that the plaintiff bank had notice and knowledge of the fact that the said defendant Amis was an accommodation maker, and that the said note was signed by the said Amis with the express understanding that it was to be used as collateral security for the above-mentioned loan of $6,568.19, and for no other purpose.

By counterclaim the defendant Cavin also alleged that prior to the making of the note in question he was in the automobile business in El Paso, Tex., and the plaintiff was his banker, and that during the course of their business he made various notes to the bank from time to time, each of which was secured by mortgages on certain automobiles, and as the automobiles were sold a portion of the proceeds would be applied upon the respective obligations; and that, upon information and belief, the defendant was not indebted to the plaintiff bank, but that he was not possessed of the data necessary to show payments, and therefore, prayed an accounting from the plaintiff bank, and asked for judgment for any amount that might be found to be due, offered to pay any amount that he might owe and also alleged, among other things, that, by reason of the various credits, the note of January 3, 1916, for which the note in suit was given as collateral, had been fully paid and satisfied.

The plaintiff bank apparently did not resist the application for an accounting, but filed a reply, and attached to it an itemized statement, purporting to show all the notes made by the defendant Cavin from time to time, and all amounts received by the said bank, either by way of payment or realized from sales of autobiles by the said bank after Cavin had suspended business.

Much testimony was taken on the various items of account, but it was all taken before the court; no reference having been made. It was also claimed by the plaintiff bank that on or about November 29, 1915, Cavin became the partner of one Ottestad in the handling of Saxon automobiles, at El Paso, Tex., and on that date the firm of Ottestad & Cavin executed to the plaintiff bank a note in the sum of approximately $2,600, and that later, about January 3, 1916, Cavin succeeded to the business of Ottestad, assuming the debts of the said firm, and among which were several notes made in October and November by the Saxon Motor Company prior to Cavin's connection with the firm, aggregating about $2,400; that on April 1, 1916, after the making of the note of January 3, to which the note sued on in this case was collateral, and after maturity of the said collateral note, Cavin obtained from the bank a further loan of $4,173.54, and executed a note therefor to the bank, and on April 26, a loan of $3,874.39, and May 30 a loan of $200, each time executing a note to the bank therefor, and that by reason of the agreement contained in the note of January 3, 1916, the said Amis, upon the note which is the subject of this suit, became liable, not only for any balance which Cavin failed to pay upon the note of January 3, 1916, but any balance upon the note of Ottestad and Cavin of November 29, 1915, and upon the indebtedness of the Saxon Motor Company prior to said date, and upon any and all of said notes of April 1 and April 26, and May 30.

The court, having heard the evidence, made one finding that the defendants were indebted to the plaintiff in the full amount of the note sued on, together with accumulated interest and attorney's fees. Subsequently, upon the request of the defendant at the time of entering the judgment, the court made other findings, none of which, however, were findings in account, but among other things, found that the defendants were not liable upon any indebtedness of the Saxon Motor Sales Company made prior to the time of Cavin's connection with the said firm, but holding the defendant Amis liable for

the balance due upon the note of November 29, 1915, of Ottestad and Cavin, the balance due upon the note of January 3, 1916, and the notes of April 1, April 26, and May 30, 1919. The court further found:

"(1) That the note described in the complaint was signed by the defendants, with the understanding that the same was to be for the benefit of the defendant Cavin, and the defendant Amis was merely an accommodation indorser thereon, and that it was to be used as collateral security to a note to be made by the said Cavin to the plaintiff for $6,500, which note was made afterwards on January 3, 1916, and the note in question placed as collateral therewith, the said note of $6,500 having been made by the said Cavin to obtain funds to pay for certain automobiles to carry on his business of an automobile salesman in El Paso, Tex.

"(2.) That the plaintiff had notice that the defendant Amis was merely an accommodation indorser at the time it took the said note, and that the same was to be placed as collateral security."

The trial judge further held that it was unnecessary for him to ascertain or find the balances remaining due on the above-mentioned notes, but found that the balances due were equal to the judgment rendered on the note sued on. Both defendants appealed from the judgment of the court herein.

[**1, 2**] During the course of the trial, plaintiff below, appellee here, at the close of plaintiff's case in chief requested the court that a competent man be appointed to audit the books and arrange any credit on the proper notes, and report the same to the court. The defendant Cavin also asked for an accounting. The court refused to accede to this request, evidently taking the position that both defendants were liable in an amount in excess of the note sued upon, with interest and attorney's fees, and that plaintiff was entitled to recover at least that amount. The court was in error in this regard. It was found as a fact, as heretofore set forth, that the joint note of December 22, 1915, the one in suit, was given as collateral security for the note of January 3, 1916, the $6,500 note, and that Amis was an accommodation maker thereon; that the plaintiff bank had notice and knowledge of this transaction. The defendant Amis was therefore

liable only under his contract for the payment of the $6,500 note, or the balance which was due thereon.

"It is well settled that, where the holder of accommodation paper has received it as security for a debt, he can recover thereon, in an action against the accommodation maker or acceptor, only the amount of the debt for which the instrument was pledged, unless he is accountable to some other person for the surplus." 8 C. J. "Bills and Notes," par. 416, p. 265.

Amis was not liable for other indebtedness of Cavin under the clause in Cavin's $6,500 note, pledging the $3,000 note for payment of other indebtedness of Cavin, because the contract of Amis with the bank was to secure the $6,500 note only, and the collateral given could not be diverted by the bank of Cavin to other indebtedness without his consent.

"A transferee of a bill or note who takes it knowing that it has been diverted from the purpose for which it was given cannot maintain an action thereon against the accommodation party." 8 C. J. "Bills and Notes," par. 442, p. 282.

[3] As to the liability of Cavin, the case is different. The note of January 3, 1916, the $6,500 note, signed by Cavin, for which the note in suit was given as collateral security, contained this phrase:

"That the surplus, if any, after payment of this note, and any and all other indebtedness due by the undersigned to said bank, or its assigns, together with all costs as above stated, shall be paid by the maker of this note."

Cavin was liable with Amis under the joint and several note in suit, up to the amount of said note for any balance remaining due on the $6,500 note, for which the note in suit was given as collateral. He alone was also liable on this note in suit under the terms by which he pledged its collateral "for any and all other indebtedness due by him (the undersigned) to said bank." His liability under the joint and several note in suit by the terms of the $6,500 note, which he alone signed, was for any and all other indebtedness he owed the plaintiff.

[4] In a suit of this kind involving long and complicated accounts, the trial judge should have referred the matter, or if he chose not take that course, he should

have ordered an accounting, so that definite conclusions could have been arrived at as to the exact amounts due on the various accounts. The trial court as a part of his judgment found:

"(10) That the plaintiff is in possession, according to the report attached to the reply in this case and the testimony submitted herein, of certain notes and obligations and automobiles belonging to the defendant Cavin, and such property should be returned to the defendant upon payment of this judgment."

The trial court further ordered as follows:

. "It is further ordered by the court that upon payment of this judgment the plaintiff bank shall deposit with the clerk of this court for delivery to the defendants any and all property and choses in action which it may have on hand at the time payment is made, and that it shall credit upon this judgment the proceeds of any notes which it may collect, or any automobiles which it may sell before the said judgment is paid."

We are unable to determine, in spite of a careful perusal of the voluminous record, the exact amount of the counterclaim, the value of the automobiles which the plaintiff had on hand, and, except as set forth in the general judgment, we cannot determine the amount the court found due from the defendant Cavin on the other notes involved in this suit. If the automobiles were pledged as collateral for notes of Cavin, their value should have been determined, and they should have been credited on these notes. There is nothing in the findings of the court to show that had such a course been pursued, the amount of Cavin's indebtedness on the notes might have been reduced below the amount found due on the notes in suit. Moreover, the order of the court compelling the return of the other notes was not justified, as they would not be paid and satisfied by the payment of the judgment upon the note in suit, unless their total amount, after deducting all credits, was less than the amount of the judgment. As before stated, we cannot determine from the facts furnished, either by the testimony or the findings of the court whether the amounts of these notes, after deducting credits, were more or less

than the amount of the judgment. The appellant Cavin properly urged upon the trial court that these accounts should be definitely determined.

[**5**] As far as can be ascertained from the record, counsel for appellants did not assist the trial court in determining what they claim was the amount which the evidence showed was due from the defendant Amis, or upon the defendant Cavin's counterclaim. Instead of submitting to the trial court findings of fact and conclusions of law which they considered the evidence bore out, they contented themselves with questioning the court in a series of interrogatories as to what the court meant by its judgment, the nature of the defendants' liability, the consideration for defendants' liability, and questions of like character. We wish to condemn this practice of interrogating the court, instead of submitting to it ultimate findings of fact and conclusions of law which counsel for one side or the other think the evidence and law justify. We are aware, as before stated, that the trial judge refused to find facts which counsel for appellants considered important details of the case, but this did not excuse them from submitting to him the facts which they contended the evidence sustained, and the conclusions of law to be drawn from such facts. The action taken by the court did not justify counsel for appellants in failing to set forth and bring to his attention their theory of their clients' liability or non-liability, and, in case of liability, the amount thereof.

It is necessary for this case to be reversed and sent back for a new trial in order that the whole matter may be investigated, statements of account made, and the liability of the defendants fixed in accordance with the principles of law laid down in this decision; and it is so ordered.

PARKER, C. J., and ROBERTS, J., concur.